**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Case #3:19-cv-00507

Robert W Herman

Plaintiff(s),

vs.

Experian Information Solutions Inc

Defendant(s).

**VERIFIED PETITION FOR PERMISSION TO PRACTICE IN THIS CASE ONLY BY ATTORNEY NOT ADMITTED TO THE BAR OF THIS COURT AND DESIGNATION OF LOCAL COUNSEL**

FILING FEE IS $250.00

_____Thomas J Lyons Jr_____, Petitioner, respectfully represents to the Court:
(name of petitioner)

1.  That Petitioner is an attorney at law and a member of the law firm of

_____Consumer Justice Center PA_____
(firm name)

with offices at _____367 Commerce Court_____,
(street address)

_____Vadnais Heights_____, _____Minnesota_____, ___55127___,
(city)                              (state)                    (zip code)

___651-770-9707___, tommy@consumerjusticecenter.com.
(area code + telephone number)        (Email address)

2.  That Petitioner has been retained personally or as a member of the law firm by

_____Robert W Herman_____ to provide legal representation in connection with
[client(s)]

the above-entitled case now pending before this Court.

Rev. 5/16

3.   That since _____12/21/2011_____, Petitioner has been and presently is a
                         (date)
member in good standing of the bar of the highest Court of the State of _____Minnesota_____
                                                                              (state)
where Petitioner regularly practices law.  Petitioner shall attach a certificate from the state bar or

from the clerk of the supreme court or highest admitting court of each state, territory, or insular

possession of the United States in which the applicant has been admitted to practice law certifying

the applicant's membership therein is in good standing.

4.   That Petitioner was admitted to practice before the following United States District

Courts, United States Circuit Courts of Appeal, the Supreme Court of the United States and Courts

of other States on the dates indicated for each, and that Petitioner is presently a member in good

standing of the bars of said Courts.

| Court | Date Admitted | Bar Number |
|---|---|---|
| State of Minnesota | 12/21/2011 | 0249646 |
| USDC - District of Minnesota | 03/15/2012 | 0249646 |
| USDC - Western District of Wisconsin | 03/15/2012 | 0249646 |
| USDC - Eastern District of Wisconsin | 03/15/2012 | 0249646 |
| USDC - District of North Dakota | 03/15/2012 | 0249646 |
| | | |
| | | |

5.   That there are or have been no disciplinary proceedings instituted against petitioner,

nor any suspension of any license, certificate or privilege to appear before any judicial, regulatory

or administrative body, or any resignation or termination in order to avoid disciplinary or

disbarment proceedings, except as described in detail below:

See attached Affidavit of Thomas J. Lyons Jr.

2

Rev. 5/16

6.  That Petitioner has never been denied admission to the State Bar of Nevada. (Give particulars if ever denied admission):

None

7.  That Petitioner is a member of good standing in the following Bar Associations.

Minnesota State Bar Association

8.  Petitioner has filed application(s) to appear as counsel under Local Rule IA 11-2 (formerly LR IA 10-2) during the past three (3) years in the following matters: (State "none" if no applications.)

| Date of Application | Cause | Title of Court Administrative Body or Arbitrator | Was Application Granted or Denied |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(If necessary, please attach a statement of additional applications)

9.  Petitioner consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada.

10.  Petitioner agrees to comply with the standards of professional conduct required of the members of the bar of this court.

11.  Petitioner has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

3

That Petitioner respectfully prays that Petitioner be admitted to practice before this Court

FOR THE PURPOSES OF THIS CASE ONLY.


_____
Petitioner's signature

STATE OF _____Minnesota_____ )
                                )
COUNTY OF _____Ramsey_____ )

_____Thomas J Lyons Jr_____ , Petitioner, being first duly sworn, deposes and says:

That the foregoing statements are true.


_____
Petitioner's signature

Subscribed and sworn to before me this

__26th__ day of __August__, __2019__.

_____
Notary Public or Clerk of Court

My Commission Expires: 
NOTARY PUBLIC - MINN.
ANDREA L WEBER

## DESIGNATION OF RESIDENT ATTORNEY ADMITTED TO THE BAR OF THIS COURT AND CONSENT THERETO.

Pursuant to the requirements of the Local Rules of Practice for this Court, the Petitioner

believes it to be in the best interests of the client(s) to designate _____Craig B Friedberg_____,
                                                                      (name of local counsel)
Attorney at Law, member of the State of Nevada and previously admitted to practice before the

above-entitled Court as associate resident counsel in this action. The address and email address of

said designated Nevada counsel is:

_____4760 S Pecos Rd, Suite 103_____,
                                (street address)

_____Las Vegas_____, _____Nevada_____, __89121__
        (city)                    (state)          (zip code)

_____702-435-7968_____, _____attcbf@cox.net_____.
(area code + telephone number)        (Email address)

4

Rev. 5/16

By this designation the petitioner and undersigned party(ies) agree that this designation constitutes agreement and authorization for the designated resident admitted counsel to sign stipulations binding on all of us.

## APPOINTMENT OF DESIGNATED RESIDENT NEVADA COUNSEL

The undersigned party(ies) appoint(s) _____Craig B Friedberg_____ as
<div style="margin-left:4em">(name of local counsel)</div>
his/her/their Designated Resident Nevada Counsel in this case.

_____
(party's signature)

Plaintiff Robert W Herman
_____
(type or print party name, title)

_____
(party's signature)

_____
(type or print party name, title)

### CONSENT OF DESIGNEE
The undersigned hereby consents to serve as associate resident Nevada counsel in this case.

_____
Designated Resident Nevada Counsel's signature

NV4606                           attcbf@cox.net
Bar number                       Email address

APPROVED:

Dated: this __11th__ day of ____October____, 20_19_.

_____
UNITED STATES DISTRICT JUDGE

5

Rev. 5/16

## DECLARATION OF THOMAS J. LYONS JR. IN SUPPORT OF APPLICATION TO APPEAR PRO HAC VICE

I, Thomas J. Lyons, Jr., do hereby state as follows:

1.  I am admitted to practice before and am a member in good standing of the Bar of the highest court of the State of Minnesota, where I regularly practice law. My Minnesota Bar No. is 0249646.

2.  As background, I was initially licensed to practice law in the State of Minnesota on October 28, 1994.

3.  I was party to a disciplinary proceeding that resulted in the suspension of my law license from April 8, 2010 to April 8, 2011. *See* In re Lyons, 780 N.W. 2d 629 (Minn. 2010). (*See Attached Exhibit A*). The decision in that case details my prior disciplinary offenses. I reapplied for admission before the Minnesota Supreme Court and my petition for reinstatement was granted on December 21, 2011. *See* In re Lyons A11-0758. (*See Attached Exhibit B*). There are no disciplinary proceedings pending against me as a member of the bar in any jurisdiction.

4.  I was reciprocally disciplined in the United States District Court for District of Montana. *See* In re Lyons AD 10-05. I consented to the Montana Court's Order dated June 24, 2010 and consented to the suspension of my admission to the Bar of that Court to coincide with the time limits set by the

1

Supreme Court of Minnesota.

5.     I was reciprocally disciplined in the United States District Court for District of Minnesota. *See* In re Lyons 11-mc-93 (MJD). I was suspended from the Minnesota Court and applied for reinstatement and my reinstatement was granted on March 15, 2012.

6.     I have been admitted to practice in the following Courts since my reinstatement:

- Supreme Court Minnesota;
- U.S.D.C. Minnesota;
- U.S.D.C. Western District of WI;
- U.S.D.C. Eastern District of WI;
- Southern District of Iowa – Pro Hac Vice;
- Northern District of Iowa – Pro Hac Vice;
- Middle District of Florida – Pro Hac Vice;
- Northern District of California;
- District of Illinois – Pro Hac Vice;
- Southern District of Indiana – Pro Hac Vice;
- U.S.D.C. North Dakota;
- U.S.D.C. Central District of California – Pro Hac Vice;
- U.S.D.C. Southern District of California – Pro Hac Vice
- U.S.D.C. District of Colorado;
- U.S.D.C. Southern District of Texas – Pro Hac Vice; and
- U.S.D.C. Eastern District of Texas – Pro Hac Vice.

7.     I am currently in good standing and eligible to practice in the above referenced courts.

8.     A current certificate of good standing from the State of Minnesota is attached to this Declaration as *Exhibit C*.

9.     A current certificate of good standing from the United States District Court - District of Minnesota is attached to this Declaration as *Exhibit D*.

10.     I was the subject of disciplinary investigation by the Minnesota Office of Lawyers Professional Responsibility concerning my law firm Consumer Justice Center's website having an error concerning my admission to the state bar of North Dakota. This complaint was brought by another attorney who is employed by a Defendant law firm in the certified class action entitled *Rizzo v. Kohn Law Firm*, 3:17-cv-00408-jdp. Once I was notified of the error, I immediately took steps to correct the contents of my website. The confusion arose as a result of my being admitted in Federal Court in North Dakota and the website not clearly distinguishing between state and federal court admission. The Minnesota Officer of Lawyers Professional Responsibility issued a private admonition for the website error.

11.     The identical complaint was filed against me in North Dakota at the same time and the North Dakota Discipline Board issued a private admonition.

12.     Should additional information be required or requested I will promptly provide such information.

    I declare under penalty of perjury of the laws of the United States that the foregoing is correct.

Dated this 26th day of August, 2019.

Respectfully submitted,

s/Thomas J. Lyons Jr.
Thomas J. Lyons, Jr., Esq.

3

Minnesota Attorney I.D. #:  0249646
CONSUMER JUSTICE CENTER P.A.
367 Commerce Court
Vadnais Heights, MN  55127
Telephone:  651-770-9707
Email:  tommy@consumerjusticecenter.com

# EXHIBIT A

STATE OF MINNESOTA

IN SUPREME COURT

A09-472

Original Jurisdiction

Per Curiam

In re Petition for Disciplinary Action against
Thomas John Lyons, Jr., a Minnesota Attorney,
Registration No. 249646.

Filed: April 8, 2010
Office of Appellate Courts

---

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, Minnesota, for petitioner.

Eric T. Cooperstein, Minneapolis, Minnesota, for respondent attorney.

---

## SYLLABUS

Indefinite suspension with no right to petition for reinstatement for a minimum of 12 months is the appropriate discipline for a lawyer who was untruthful to opposing counsel about whether his client died before or after counsel reached agreement on terms of a settlement, was untruthful to the Director, to opposing counsel, and during testimony before the referee about when he learned of his client's death, and had a substantial disciplinary history.

## OPINION

PER CURIAM.

In March 2009, the Director of the Office of Lawyers Professional Responsibility (Director) served and filed a petition for disciplinary action against respondent Thomas

1

Lyons, Jr.  The Director alleged that Lyons' failure to disclose his client's death during settlement negotiations and false and misleading statements made to opposing counsel and to the Director about the client's death constituted unprofessional conduct warranting public discipline.  Lyons served and filed a general denial.  Pursuant to Rule 14 of the Minnesota Rules on Lawyers Professional Responsibility (RLPR), a referee hearing was held, after which the referee filed findings of fact, conclusions of law, and a recommendation for discipline with our court.  The referee recommended that Lyons be indefinitely suspended from the practice of law in the State of Minnesota with no right to petition for reinstatement for a minimum of 12 months.  We adopt the referee's recommended discipline.

Lyons was admitted to practice law in Minnesota on October 28, 1994.  At all times relevant to these proceedings, Lyons was engaged in the practice of law at a law firm known as the Consumer Justice Center, P.A., in Vadnais Heights, Minnesota.  Lyons has been disciplined on seven previous occasions.  In December of 1998, Lyons was both admonished and placed on private probation for separate incidents of misconduct; in 2001, he was publicly reprimanded and placed on probation for two years; in 2002, Lyons was admonished; and he was again admonished in 2005.  In addition, Lyons received two separate amended admonitions in 2007.  Lyons' previous discipline resulted from material misrepresentations, prosecuting frivolous claims, and failure to follow appropriate procedure.

In 2006, Lyons was retained by a man who had been erroneously reported by Trans Union, LLC, a credit reporting agency, to be dead.  In September 2006, a

2

complaint against Trans Union under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (2000), was filed in the United States District Court for the District of Montana. Lyons arranged for a Montana attorney, Sean Frampton, to serve as local counsel.

On September 18, 2007, Lyons and counsel for Trans Union engaged in a settlement conference, but no settlement was reached. On October 6, 2007, the client was hospitalized. On October 7, Frampton sent Lyons an email that said the client "is ill and in critical conditions [sic]. Please keep him in your prayers. Call and I will explain." On October 8, Lyons replied, "Are you in the office today or on your cell phone? Should I explore settlement with Defendant?" On October 9, Frampton replied, "The doctors will be pulling the life support today. Sadly, he isn't going to make it. Upon direction of [the client's wife], please settle the lawsuit with [Trans Union]." That same day, Lyons replied, "I will do so and report back to you ASAP. I am totally confused by the series of events leading up to this tragic loss. Please advise when you have more information about the funeral and wake." Lyons then emailed Trans Union, expressing the need to "confirm settlement positions" and requesting that Trans Union respond by telephone. The client died on October 9.

On October 26, 2007, Trans Union sent an email to Lyons offering to settle the claim for $19,000. The following day, Lyons accepted the offer by email and requested that opposing counsel "[d]raft the release and order the check made payable to [the Consumer Justice Center] trust account." Lyons did not inform Trans Union of the client's death. On November 6, Trans Union sent Lyons a settlement agreement and

3

release. The following week, Lyons emailed Frampton, asking whether the client's wife could sign the agreement as "power of attorney." Frampton replied that the client's wife could sign the settlement agreement because she was the personal representative of the estate. Although the settlement documents were not yet signed, a stipulation dismissing the case with prejudice was filed electronically with the federal court on December 14, 2007.

In an email to Trans Union dated January 7, 2008, Lyons noted that he was "[s]till working on [the client] who was hospitalized and I think the release is being signed by his wife or power of attorney." Trans Union changed the signature line of the settlement agreement to read "Agent (Attorney-In-Fact)" and instructed Lyons to attach the power of attorney to the agreement as an exhibit. On January 14, 2008, the agreement, signed by the client's wife as personal representative of the estate rather than under a power of attorney, was returned to Trans Union.

Upon receiving the signed settlement agreement, Trans Union emailed Lyons asking if the client had passed away. Two days later, Lyons responded, "Yes – HOW IRONIC." The referee found and Lyons does not dispute that this e-mail on January 31, 2008, was Lyons's first disclosure to Trans Union that the client had died. The day following Lyons' disclosure, Trans Union asked, "When did he die? When did you find out?" Lyons replied, "Unsure. Recently." Trans Union responded by asking, "Did he die before or after we agreed to settle?" Lyons replied, "We settled before I found out he passed away." Trans Union again asked, "Did [the client] die before or after we agreed to settle?" Lyons replied that the client "died after we agreed to settle." Trans Union

4

demanded to know, "On what date did [the client] die? On what date did you find out?" Lyons replied, "Unsure of exact dates – sorry. I learned about it from local counsel afterwards – that is why we had to redo the signature block to estate after you sent it to us with only [the client's] name."

Thirteen minutes after this last reply to Trans Union on February 5, 2008, Lyons emailed Frampton and Lyons' legal assistant that Trans Union "is trying to avoid payment on this settlement." Lyons instructed his legal assistant to "pull the file and we will pinpoint to best we can the exact date of settlement" with Trans Union. Despite telling Trans Union's counsel both that the client had not died, and that he had not learned of the client's death until after the case was settled in late October, Lyons wrote to Frampton: "[The client's] date of death was 10/9/07 and I believe that was confirmed in an email the following week by Sean [Frampton]."

Trans Union then sent an email to Frampton, with a copy to Lyons, asking Frampton to fill in the dates as to when the client died and when his counsel found out. Despite Lyons' earlier email to Frampton acknowledging that Frampton had informed him of the client's death within a week of the client's passing, Lyons emailed Frampton:

FYI–

I don't know that it is necessary to respond to him. However if you do here is the sequence as I understand it.

[The client] passed away 10/9/07

[Trans Union] offers 19k on 10/26/07

I accept via email on 10/27/07

5

There are no emails from you to me on notification of [the client's] death until after November 1, 2007.

Any questions please call.

Frampton responded to Lyons that the matter was irrelevant as they did not have an obligation to advise Trans Union of the client's death and that he would defer to Lyons' recollection. Lyons replied, "I agree completely. Just defer to me." In response to another inquiry from Trans Union, Lyons wrote, "[THE CLIENT] DIED ON 10/9/07. ACCORDING TO OUR EMAILS WE SETTLED ON 10/27/07. I DID NOT LEARN OF HIS PASSING UNTIL AFTER WE SETTLED – SORRY EXACT DATE UNKNOWN BY MYSELF OR FRAMPTON. SEND THE CHECK AND WE CAN CLOSE OUR FILES." Trans Union then asked Frampton directly when he found out about the client's death; Frampton responded that he found out on the day the client died.

Trans Union indicated that it would not be bound by the settlement and, as a result, Frampton filed an action in Montana state court to enforce the settlement agreement. Trans Union counterclaimed and added Lyons and Frampton as parties. That litigation was resolved when Lyons agreed to pay $7,500 to the client's wife.

On April 7, 2008, the Director notified Lyons that an ethics complaint had been filed with respect to the settlement and that Lyons should submit "all documents that evidence, memorialize, or refer or relate in any way to, any communications, whether verbal, written or electronic, you had with any person regarding the death of [the client]." In response, Lyons provided some documentation, including a number of emails. The Director subsequently obtained additional emails from other sources. At the referee

hearing, Lyons testified that he had provided the Director with all the information he could locate in his files, that his practice was to print emails he received before deleting the electronic copies, and that his email provider did not provide copies of deleted emails more than 60 days after deletion. The referee found that Lyons' failure to provide the Director with the emails, which were later obtained by the Director from other sources, violated Rule 25(a), RLPR.[1] The referee also noted that Lyons had written in an email that he "may have telephone call notes" relating to the client's death, but failed to provide any such notes to the Director.

After Lyons provided his initial response, the Director requested that Lyons "state how and from whom he learned [the client] had died." Lyons replied that it was his recollection that he heard from Frampton sometime in early November, after the settlement had been negotiated. Lyons similarly testified at the referee hearing that he did not recall receiving actual notice of the client's death until after he reached a settlement with Trans Union. However, the client's local counsel in Montana, Frampton, testified in his deposition, which was submitted to the referee in lieu of Frampton's appearance at the referee hearing, that he had a conversation with Lyons notifying him of the client's death "within a short time frame after" the client died, and though he did not recall the exact date, he believed it was within a day or two of death. The referee found

---

[1]     Rule 25(a), RLPR, requires a lawyer who is the subject of an investigation or disciplinary proceeding to cooperate with the Director and his staff "by complying with reasonable requests," including requests to furnish documents.

that Frampton informed Lyons of the client's death by telephone within a week of the client's death.

At the referee hearing, Lyons testified that when he responded to Trans Union, "Sorry, exact date unknown by myself or Frampton," he meant that neither he nor Frampton knew the exact date that Frampton had notified him of the client's passing. However, the referee found that by that testimony Lyons was falsely indicating uncertainty as to the date of the client's death.

The referee concluded that Lyons' conduct violated Rules 3.3(a)(1), 4.1, and 8.4(c) and (d) of the Montana Rules of Professional Conduct;[2] Rules 8.1(a) and (b)[3] and

---

[2]    The referee applied the Montana Rules of Professional Conduct because Rule 8.5(b)(1) of the Minnesota Rules of Professional Conduct provides in pertinent part that "[i]n any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied . . . for conduct in connection with a matter pending before a tribunal [are] the rules of the jurisdiction in which the tribunal sits." The litigation was venued in the United States District Court for the District of Montana, and that court applies the American Bar Association's Model Rules of Professional Conduct and the Montana Rules of Professional Conduct. Rule 83.13, Local Rules of Procedure of the United States District Court for the District of Montana. Therefore, and as the parties agree, the Montana Rules of Professional Conduct apply to Lyons' conduct that occurred in connection with the litigation at issue.

Montana Rule 3.3(a)(1) provides that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false stat[e]ment of material fact or law previously made to the tribunal by the lawyer."

The referee's ruling refers to Montana Rule 4.1. Montana Rule 4.1(a) provides that "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person."

Montana Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

(Footnote continued on next page.)

8

8.4(c) and (d)[4] of the Minnesota Rules of Professional Conduct; and Rule 25 of the

Minnesota Rules on Lawyers Professional Responsibility.[5] The referee recommended

that Lyons be indefinitely suspended with no right to petition for reinstatement for at least

12 months.

I.

Lyons does not challenge the referee's finding that he failed to disclose the client's

death to Trans Union before accepting Trans Union's settlement offer. Nor does Lyons

---

(Footnote continued from previous page.)
Montana Rule 8.4(d) provides that "[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

However, with regard to Lyons' conduct during this disciplinary proceeding, the Minnesota Rules of Professional Conduct and the Minnesota Rules on Lawyers Professional Responsibility apply.

[3] Rule 8.1(a) of the Minnesota Rules of Professional Conduct provides in relevant part that "a lawyer . . . in connection with a disciplinary matter, shall not knowingly make a false statement of material fact." Rule 8.1(b) provides in relevant part that "a lawyer . . . in connection with a disciplinary matter, shall not fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from [a] disciplinary authority."

[4] Minnesota Rule 8.4(c), like Montana's Rule 8.4(c), provides that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Minnesota Rule 8.4(d), like Montana's Rule 8.4(d), provides that "[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

[5] Rule 25(a)(1), RLPR, provides that "[i]t shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to [f]urnish designated papers, documents or tangible objects."

challenge the referee's finding that he made a number of misrepresentations to Trans Union regarding when the client died and when he learned of the client's death. Lyons does, however, claim that the referee erred in finding that his communications with the Director and his testimony at the hearing were intentionally false and in finding that he "fail[ed] to make full documentary disclosure of relevant communications" to the Director.

The Director bears the burden of proving misconduct by clear and convincing evidence. *In re Varriano*, 755 N.W.2d 282, 288 (Minn. 2008); *In re Gillard*, 271 N.W.2d 785, 805 n.3 (Minn. 1978) (adopting "full, clear and convincing evidence" standard for attorney discipline matters) (internal quotation marks omitted) (citation omitted). This standard requires a high probability that the facts are true. *In re Houge*, 764 N.W.2d 328, 334 (Minn. 2009); *see also Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn. 1978) (noting that clear and convincing evidence is established by "more than a preponderance of the evidence, but less than proof beyond a reasonable doubt"). If either party orders a transcript of the hearing, as Lyons did here, the referee's findings of fact and conclusions of law are not conclusive. Rule 14(e), RLPR; *In Re Ryerson*, 760 N.W.2d 893, 901 (Minn. 2009). We nonetheless give great deference to the referee's findings and will not reverse those findings unless they are clearly erroneous, especially when the referee's findings rest on disputed testimony or in part on credibility, demeanor, and sincerity. *In re Barta*, 461 N.W.2d 382, 382 (Minn. 1990). To conclude that a referee's findings are "clearly erroneous," we must be "left with the definite and firm conviction that a mistake has been made." *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn. 1987).

Lyons acknowledges that he was "actively tr[ying] to avoid disclosing" the client's death to Trans Union when he wrote to Trans Union's counsel on January 7, 2008, that the client, who had died nearly three months earlier, "was hospitalized." And Lyons now accepts that his "recollection was wrong" and that "he knew prior to October 27, 2007, that [the client] had died." However, Lyons claims that the referee erred in finding that he was untruthful both when he wrote to the Director in May 2008 and when he testified at the referee hearing that he did not recall learning of the client's death until after the settlement agreement was reached. Our careful review satisfies us that the record supports the referee's findings that Lyons was untruthful in statements to the Director and in testimony before the referee. Here, the referee's findings that Lyons was untruthful in his statements to the Director and in the testimony he gave at the hearing were based on the referee's evaluation of Lyons' demeanor, credibility, and sincerity, and we defer to a referee's findings on such matters. *In re Moulton*, 721 N.W.2d 900, 905 (Minn. 2006) ("Deference to the referee is particularly appropriate when the findings are based on a respondent's demeanor, credibility, or sincerity."). Thus, we conclude that the referee's findings are not clearly erroneous.

Lyons also claims that the referee's findings that he failed to provide all requested emails and telephone notes, and thus failed to cooperate with the Director, are also clearly erroneous. Lyons argues that there is no evidence in the record that would support the conclusion that he had, either in his possession or available to him, any of the missing emails or notes at the time they were requested. Whether the referee erred in finding that Lyons failed to cooperate with the Director's investigation is a closer question, but we

11

need not answer it to determine the appropriate discipline for Lyons' misconduct because, in the end, the discipline we impose would not be any different based on the presence or absence of that finding.

<div align="center">II.</div>

The sanction recommended by the referee carries great weight, although we have the final responsibility for determining the appropriate discipline. *In re Jagiela*, 517 N.W.2d 333, 335 (Minn. 1994). In imposing discipline, our purpose is not to punish the attorney, but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys. *In re Plummer*, 725 N.W.2d 96, 98 (Minn. 2006); *In re De Rycke*, 707 N.W.2d 370, 373 (Minn. 2006). In deciding the appropriate discipline, we consider the nature of the misconduct, the cumulative weight of the rule violations, and the resulting harm to the public and to the legal profession. *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). In addition, we consider any mitigating or aggravating circumstances. *In re Houge*, 764 N.W.2d 328, 338 (Minn. 2009) (citing *In re Nelson*, 733 N.W.2d at 463-64). Although our past decisions provide guidance and aid in enforcing consistent discipline, we impose discipline based on each case's unique facts and circumstances. *In re Redburn*, 746 N.W.2d 330, 334 (Minn. 2008).

Lyons' misconduct is serious. Lyons made false and misleading statements to the Director during the disciplinary investigation when he asserted that he did not learn of the client's death until sometime in early November, after the settlement with Trans Union had been negotiated. In addition, Lyons gave false and misleading testimony on the same

<div align="center">12</div>

subject at the referee hearing. Finally, Lyons' false and misleading statements to opposing counsel about whether he knew of his client's death before the parties reached a settlement concerned a material fact. *See In re Forrest*, 730 A.2d 340, 345-46 (N.J. 1999) (noting that lawyer's failure to disclose his client's death "deceived both his adversary and the arbitrator about a fact that was crucial to the fair and proper resolution of the litigation" and suspending lawyer for six months); *Harris v. Jackson*, 192 S.W.3d 297, 306 (Ky. 2006) (noting that the death of the plaintiff left the lawyer "without a party to represent in the action"); *see also Ky. Bar Ass'n v. Geisler*, 938 S.W.2d 578, 579 (Ky. 1997) ("When a lawyer's client dies in the midst of the settlement negotiations of a pending lawsuit in which the client was the claimant, the lawyer has a duty to inform opposing counsel and the Court in the lawyer's first communications with either after the lawyer has learned of the fact." (quoting ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 95-397 (1995))). When "a lawyer demonstrates a lack of that truthfulness and candor that the courts have a right to expect of their officers," we "do not hesitate to impose severe discipline." *In re Schmidt*, 402 N.W.2d 544, 548 (Minn. 1987).

The referee found that Lyons' disciplinary history substantially aggravates the sanction for his conduct. *See In re Gherity*, 673 N.W.2d 474, 480 (Minn. 2004) (holding that a lawyer's prior disciplinary history is relevant to determine an appropriate sanction). We agree. Lyons has previously been subject to discipline on seven occasions. The fact that Lyons has been previously disciplined seven times suggests that he has not renewed his "commitment to comprehensive ethical and professional behavior." *See In re Isaacs*,

451 N.W.2d 209, 212 (Minn. 1990) (internal quotation marks omitted). The referee also found that Lyons' substantial experience in the practice of law is an aggravating factor. *See In re Moeller*, 582 N.W.2d 554, 559-60 (Minn. 1998) (noting the referee's conclusion that a lawyer's substantial experience in the practice of law was an aggravating factor); *see also In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004) (considering the fact that the lawyer was "an experienced attorney"). Again, we agree.

The misconduct here, coupled with Lyons' substantial disciplinary history, warrants significant discipline. The referee recommended that Lyons be suspended indefinitely and that he not be permitted to apply for reinstatement for a minimum of 12 months. We conclude that the discipline recommended by the referee is the appropriate discipline in this case. We therefore adopt the referee's recommendation and indefinitely suspend respondent Thomas John Lyons, Jr., from the practice of law for a minimum of 12 months.

Accordingly, we order that:

1.      Respondent Thomas John Lyons, Jr., be indefinitely suspended from the practice of law, effective immediately, and be ineligible to petition for reinstatement for a minimum of 12 months from the date of filing of this opinion.

2.      Lyons shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3.      If Lyons seeks reinstatement, he must comply with the requirements of Rule 18(a)-(c), RLPR.

14

4.     Lyons shall pay $900 in costs pursuant to Rule 24, RLPR.

So ordered.

# EXHIBIT B

STATE OF MINNESOTA

IN SUPREME COURT

A11-0758

OFFICE OF
APPELLATE COURTS

DEC 21 2011

FILED

In re Petition for Reinstatement of
Thomas J. Lyons, Jr., a Minnesota Attorney,
Registration No. 249646.

ORDER

On April 8, 2010, we suspended petitioner Thomas J. Lyons, Jr., from the practice

of law for a minimum of 12 months for making misrepresentations to opposing counsel,

to the Director of the Office of Lawyers Professional Responsibility during his

investigation of the matter, and to the referee we appointed to hear the disciplinary

petition. *In re Lyons*, 780 N.W.2d 629 (Minn. 2010). Petitioner applied for reinstatement

in April 2011 and a hearing was held before a panel of the Lawyers Professional

Responsibility Board. The panel found that petitioner has proven by clear and

convincing evidence that he is morally fit to resume the practice of law. *See In re*

*Swanson*, 343 N.W.2d 662, 664 (Minn. 1984) (providing that the burden is on the

attorney to establish by clear and convincing evidence the moral fitness to resume the

practice of law). The panel recommends that petitioner be reinstated to the practice of

law and placed on supervised probation for a period of two years. The Director agrees

with the panel's recommendation.

1

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that petitioner Thomas J. Lyons, Jr., be reinstated to the practice of law and placed on probation for a period of two years, subject to the following terms and conditions:

(a) Petitioner shall cooperate fully with the efforts of the Director's office to monitor compliance with this probation. Petitioner shall promptly respond to the Director's correspondence by the due date. Petitioner shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, petitioner shall authorize the release of information and documentation to verify compliance with the terms of this probation.

(b) Petitioner shall abide by the Minnesota Rules of Professional Conduct.

(c) Petitioner shall be supervised by a licensed Minnesota attorney appointed by the Director to monitor compliance with the terms of this probation. Within 30 days of the date of filing of this order, petitioner shall provide the Director with the names of four attorneys who have agreed to be nominated as petitioner's supervisor. If, after diligent effort, petitioner is unable to locate a supervisor acceptable to the Director, the Director will seek to nominate a supervisor. Until a supervisor has signed a consent to supervise, petitioner shall, on the first day of each month, provide the Director with an inventory of client files as described below and shall make active client files available to the Director upon request.

(d) Petitioner shall cooperate fully with the supervisor's efforts to monitor compliance with this probation. Petitioner shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. By the first day of each month during probation, petitioner shall submit to the supervisor an inventory of all active client files. With respect to each active file, the inventory shall disclose the client name, type of representation, date opened, most recent activity, next anticipated action, and anticipated closing date. Petitioner's supervisor shall file written reports with the Director at least quarterly, or at such more frequent intervals as the Director may reasonably request.

(e) Within 60 days of the date of filing of this order, petitioner shall provide the Director and his probation supervisor, if one has been appointed, with a detailed written plan outlining office procedures to be

2

followed in handling all aspects of clients' cases, including the strategy and motions to be brought in each case, and shall update the written plan whenever any change in petitioner's practice occurs. Petitioner shall provide the Director and his probation supervisor with progress reports as they may request.

Dated: December 21, 2011

BY THE COURT:

Alan C. Page
Associate Justice

3

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: Thomas J. Lyons, Jr.,                                    11-mc-93 (MJD)

ORDER TO REINSTATE THOMAS LYONS, JR. TO PRACTICE

Before the Court is attorney Thomas J. Lyons, Jr.'s petition for reinstatement to

practice pursuant to LR 83.6(g). Catherine A. McEnroe was appointed to act as Special

Counsel for the Court in this matter. On March 5, 2012, Special Counsel delivered a

report recommending that a hearing on the petition not be held and that the petition be

granted, with certain conditions. Petitioner Thomas J. Lyons, Jr. agreed to waive his

opportunity to have a hearing.

Having reviewed the report, the Court agrees with Special Counsel that Thomas J.

Lyons, Jr. has shown, by clear and convincing evidence that he meets the criteria for

reinstatement under LR 83.6(g).    Accordingly, IT IS HEREBY ORDERED THAT:

1. Thomas J. Lyons, Jr.'s petition for reinstatement to practice [Docket No. 1] is

    GRANTED, provided that Mr. Thomas J. Lyons Jr.:

    a. Provides no less than 20 pro bono hours per year for a period of three

        years to the Federal Pro Se Project and annually submits an affidavit to

        the FBA Pro Se Project Coordinator and the Chief U.S. District Judge,

        that he has complied with his pro bono hours requirement;

    b. Complies with the conditions of his supervised probation as imposed

        by the Minnesota Supreme Court's Order dated December 21, 2011,

        A11-0758 and, as proof of his compliance, submits to the Chief U.S.

SCANNED

MAR 1 5 2012

U.S. DISTRICT COURT MPLS

District Judge a copy of every report his supervising attorney provides
to the Director of the Office of Lawyers Professional Responsibility;

c.  Notifies the Chief U.S. District Judge in writing when he is no longer
on supervised probation and provides proof that his supervised
probation period has ended; and

d.  Notifies the Chief U.S. District Judge in writing immediately if he: (1)
fails to comply with any provision of this order or the Minnesota
Supreme Court's order dated December 21, 2011, A11-0758; (2) the
Minnesota Supreme Court takes any action regarding his probationary
status; or (3) the Director of the Office of Lawyers Professional
Responsibility files a new petition for disciplinary action.

2.  The Clerk is directed to:

a.  Reinstate Thomas Lyons, Jr. once he has paid the required re-
registration fee of $40.00;

b.  Docket Special Counsel's Report in the case as of March 5, 2012; and

c.  Provide a copy of this order to the FBA Pro Se Project Coordinator.

Based on the files, records, and proceedings herein:

IT IS SO ORDERED.

Dated:

March 15, 2012

Michael J. Davis,
Chief United States District Judge

# EXHIBIT C

# STATE OF MINNESOTA
# IN SUPREME COURT

*Certificate of Good Standing*

This is to certify that the following lawyer is in good standing.

THOMAS JOHN LYONS

was duly admitted to practice as a lawyer and counselor at law in all the courts of this state on

October 28, 1994

Given under my hand and seal of this court on

July 11, 2019

*Emily J. Eschweiler*

Emily J. Eschweiler, Director
Office of Lawyer Registration

# EXHIBIT D

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

## CERTIFICATE OF GOOD STANDING

I, _____ Kate M. Fogarty _____ , Clerk of this Court,

certify that _____ Thomas J. Lyons _____ , Bar # _____ 249646 _____ ,

was duly admitted to practice in this Court on _____ 12/09/1994 _____ , and is in good standing as a member

of the Bar of this Court.

Dated at _____ St. Paul, MN _____ on _____ 07/11/2019 _____
*(Location)*               *(Date)*

_____ Kate M. Fogarty _____
*CLERK*

_____ *Signature of Clerk or Deputy Clerk* _____
*DEPUTY CLERK*